UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| marchFIRST, INC., *et al.*, | ) | Case No. 01 B 24742 |
| | ) | |
| Debtors. | ) | |
| | ) | Honorable John D. Schwartz |
| _____ | ) | |
| | ) | |
| CIT COMMUNICATIONS FINANCE | ) | Adv. No. 07 A 00379 |
| CORPORATIONS f/k/a Newcourt | ) | |
| Communications Finance Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW J. MAXWELL, personally, and | ) | |
| in his capacity as Trustee of the Estates | ) | |
| of marchFIRST, Inc., et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on the motion filed by the defendant, Andrew J. Maxwell ("Maxwell"), personally and in his capacity as trustee of the Estates of marchFIRST, Inc., et al. ("Debtors"), to dismiss the adversary complaint filed by the plaintiff, CIT Communications Finance Corporations ("CIT"), pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b).

**Background**

This bankruptcy case was commenced on April 12, 2001, when the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§101 *et seq.*, in the

United States Bankruptcy Court for the District of Delaware ("Delaware Court"). As of the Petition Date, the Debtors allegedly had leases with CIT for telephone equipment in about 20 different locations. On April 23, 2001, CIT appeared when its counsel filed an appearance in the Delaware Court. On April 25, 2001, the Delaware Court converted the case to one under Chapter 7 of the Bankruptcy Code. The Delaware Court also appointed Michael B. Joseph as trustee. On June 26, 2001, the Debtors' leases with CIT were rejected pursuant to §365(d)(1) of the Bankruptcy Code.

On July 10, 2001, the Delaware Court transferred these cases to the United States Bankruptcy Court for the Northern District of Illinois. On July 13, 2001, Maxwell was appointed trustee for the bankruptcy estates. CIT alleges that on July 20, 2001, its counsel wrote to Maxwell's counsel stating that CIT would like to make arrangements for the return of its equipment. CIT further alleges that Maxwell and his agents "stonewalled" CIT. On October 10, 2001, CIT filed an administrative expense claim against the estate, seeking $380,411 in post-petition rental fees and other costs for the equipment. On November 2, 2001, Maxwell caused to be filed a Statement of Financial Affairs that represented that the Debtors did not hold any property owned by another person.

CIT also alleges in its complaint that Maxwell employed the Bottom Line Exchange Co. to liquidate all of the furniture, fixtures and equipment at the Debtors' various locations. A review of the docket indicates that Bottom Line Exchange Co. was initially retained when the cases were in the Delaware Court and that Maxwell filed a motion to amend the original retention order. Maxwell's motion was filed on January 25, 2002 and on notice to an extensive service list. In that motion, Maxwell sought to "expand the scope of Bottom Line's retention to

include Bottom Line's assistance with the investigation and resolution of administrative claims and other claims relating to the Debtors' rejected leases ..." as well as to have Bottom Line continue to liquidate furniture, fixtures and other assets. A further review of the docket does not indicate any objection being filed by CIT to Bottom Line's continued retention or to the scope of Bottom Line's employment.

Almost a year later, on December 12, 2002, CIT filed an amended administrative claim, requesting $1,293,767 as compensation for the value of its unreturned equipment, which CIT claims was not returned due to the trustee's breach of his fiduciary duty to turn it over to CIT. No action was taken by CIT in this court until the complaint commencing this adversary proceeding was filed on May 7, 2007.

The complaint sets forth four causes of action. Count I alleges that Maxwell willfully breached his fiduciary duty to CIT by failing to file a complete inventory for the Debtors within 30 days of qualifying as trustee, stating in the Statement of Financial Affairs that the Debtors were not holding any property of third parties, failing to safeguard CIT's equipment, ignoring CIT's requests for return of the equipment and failing to inspect premises before relinquishing control of the premises. CIT seeks judgment in the amount of $3,655,712 against Maxwell in his personal capacity. In Count II CIT seeks redress for the same wrongs but against Maxwell in his official capacity as trustee. In Count III, CIT alleges that Maxwell improperly disposed of the equipment and by doing so acted *ultra vires* - outside of his mandate as trustee - and should be personally liable for the loss of the equipment, lost income from the equipment and costs of recovering the equipment. Count IV alleges that Maxwell breached his duty as a constructive bailee of the equipment and should be liable for that breach in his capacity as trustee of the

bankruptcy estate.

Maxwell's response to the complaint is this motion to dismiss the complaint. In it, he makes several arguments. As a threshold matter, Maxwell argues that all claims against him in his personal capacity should be dismissed because CIT failed to seek leave of court prior to filing this proceeding as required by the *Barton* doctrine. Maxwell further argues that, as trustee, he owes a fiduciary duty to the creditors of the estate, but not to a lessor and that CIT alleges in its complaint that it was a lessor. He then argues that the claim of *ultra vires* activity must be dismissed because it does not stand as an independent cause of action. Maxwell also argues that CIT's claim of constructive bailment should be dismissed because there is no allegation of gross neglect with respect to the bailment. Finally, Maxwell argues that all of CIT's claims should be dismissed as barred by the statute of limitations.[1]

## Discussion

The threshold question presented by Maxwell's motion is whether CIT is required to request leave from this court prior to commencing suit against the trustee. The trustee argues that such permission is necessary pursuant to the *Barton* doctrine. In Barton v. Barbour, 104 U.S. 126, 127 (1881), the Supreme Court set forth the general rule that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained."

More recently, the Seventh Circuit addressed the question of whether a trustee in bankruptcy may be sued in state court for actions that he undertook in his role as trustee. In re Linton, 136 F.3d 544 (7th Cir. 1998). In Linton, a chapter 7 trustee filed an adversary proceeding

---

[1] Two other arguments are that the claims are not ripe for determination until CIT's administrative claim is resolved and that the claims against Maxwell in his capacity as trustee are duplicative of CIT's Amended Request for Administrative Claim.

against the debtor and her son, alleging that a certain chain of transactions constituted a fraudulent conveyance. The trustee later dropped the proceeding. Almost a year after the closing of the bankruptcy case, the debtor and her son filed a motion in the bankruptcy court for leave to file a malicious prosecution suit in state court against the trustee, arguing that the trustee knew from the outset that the proceeding had no merit. Citing Barton, the court informs us that "[t]he trustee in bankruptcy is a statutory successor to the equity receiver, and it had long been established that a receiver could not be sued without leave of the court that appointed him." Id. at 545. The court exhibited concern that "[i]f [a trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded. This concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great ..." Id. The court went on to discuss its additional concerns.

> Without the requirement [of requesting leave to sue], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.

Id. The court concluded that a person wanting to bring a suit in state court against a trustee in bankruptcy must obtain leave to do so from the bankruptcy court. Id. at 546.

Here, CIT argues that such permission must be obtained *only* where a suit is to brought in a court other than the court where the trustee was appointed. CIT also requested that if such leave were necessary, it be granted *instanter*. A careful reading of the Seventh Circuit's opinion

-5-

in Linton leads this court to believe that the rule should apply regardless of the lawsuit's forum and particularly where, as here, suit is being brought during the pendency of the bankruptcy case. Regardless of the forum in which the lawsuit is brought, the concerns of the Seventh Circuit are present. There is the burden of defense. There is the threat of distraction. There is the concern that serving as a trustee will become a more irksome and expensive proposition. For these reasons, this court finds it reasonable to apply the requirement of requesting leave to sue a trustee to adversary proceedings brought in the appointing forum.[2]

Generally before leave is granted by the court, the plaintiff must demonstrate that it has a *prima facie* case against the trustee. In re Kids Creek Partners, L.P., 248 B.R. 554, 558 (Bankr. N.D. Ill. 2000); In re Berry Publishing Services, Inc,. 231 B.R. 676 (Bankr. N.D. Ill. 1999). Here, the court will not go through the exercise of determining whether CIT has a *prima facie* case because the proceeding is clearly barred by the statute of limitations.

CIT makes the following relevant allegations in its complaint. This bankruptcy case was commenced on April 12, 2001 in the Delaware Court and as of the Petition Date, the Debtors had leases with CIT for telephone equipment in about 20 different locations. On April 23, 2001, CIT appeared when its counsel filed an appearance in the Delaware Court. On April 25, 2001, the Delaware Court converted the case to one under Chapter 7 of the Bankruptcy Code. On June 26, 2001, the Debtors' leases with CIT were rejected pursuant to §365(d)(1) of the Bankruptcy Code.

On July 10, 2001, the Delaware Court transferred these cases here. On July 13, 2001,

---

[2]The court notes that applying the *Barton* doctrine in an adversary proceeding in bankruptcy court is not unprecedented. See Fisher v. Berney (In re Messina), 2003 WL 22271522 (Bankr. N.D. Ill.) (where J. Squires dismissed one count of plaintiff's complaint in an adversary proceeding for failure to obtain leave to sue the trustee).

Maxwell was appointed trustee for the bankruptcy estates. One week later, CIT's counsel wrote to Maxwell's counsel stating that CIT would like to make arrangements for the return of its equipment. On October 10, 2001, CIT filed its original administrative expense claim against the estate. On November 2, 2001, Maxwell caused to be filed a Statement of Financial Affairs that represented that the Debtors did not hold any property owned by another person.

On January 25, 2002 Maxwell filed a motion to continue the employment of Bottom Line Exchange Co., which had been retained in the Delaware Court to liquidate all of the furniture, fixtures and equipment at the Debtors' various locations. No objection was filed by CIT.

Almost a year later, on December 12, 2002, CIT filed an amended administrative claim, requesting $1,293,767 as compensation for the value of its unreturned equipment, which CIT claims was not returned due to the trustee's breach of his fiduciary duty to turn it over to CIT. No action was taken by CIT in this court until the complaint commencing this adversary proceeding was filed on May 7, 2007.

Under Illinois law, all claims as to personal property are governed by a five year statute of limitations. 735 ILCS 5/13-205 (2006). The statute provides:

> 13-205. Five year limitation. Except as provided in Section 2-725 of the "Uniform Commercial Code", approved July 31, 1961, as amended, and Section 11-13 of "The Illinois Public Aid Code", approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

CIT's causes of action are barred by this statute of limitations because the complaint was filed more than five years after the causes of action accrued. See Fuller Family Holdings, LLC v.

Northern Trust Co., 371 Ill. App.3d 605, 618, 863 N.E.2d 743, 756 (1st Dist. 2007)("Pursuant to section 13-205 of the Code, a breach of fiduciary duty claim must be brought within five years after the cause of action accrued."); Meeker v. Summers, 70 Ill. App. 3d 528, 529, 388 N.E.2d 920, 921 (5th Dist. 1979)("If a former owner has a right to recover personal property but fails to initiate a replevin action within 5 years after that right accrues, the statute of limitations bars any later action.").

CIT does not dispute that the five year statute of limitation applies to the causes of action in its complaint. It argues that the discovery rule applies, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." Hermitage Corp. v. Contractors Adjustment Co., 166 Ill.2d 72 (1995). CIT asserts that the statute of limitations did not accrue until immediately prior to when it amended its administrative expense claim on December 12, 2002. The Amended Administrative Expense Claim is the first public assertion by CIT that Maxwell acted improperly but it was not the first time that CIT knew or should have known that it had a dispute with the trustee over its property.

The most obvious notice to CIT was the fact that on November 2, 2001, Maxwell caused to be filed a Statement of Financial Affairs that represented that the Debtors did not hold any property owned by another person. That was a clear statement to CIT that Maxwell and CIT were in disagreement with respect to the status of CIT's property. That was five years and six months prior to the filing of this adversary complaint.

Furthermore, Maxwell filed a motion on notice to amend the retention order of Bottom Line Exchange. In that motion, Maxwell sought to have Bottom Line continue to liquidate

furniture, fixtures and other assets including, one might suspect, CIT's telephone equipment. This motion put CIT on further notice that it might not agree with the trustee's disposition of its property and yet there is no record on the docket that it objected to the trustee's actions. The motion was filed five years and four months prior to the filing of this adversary proceeding.

Finally, as far back as July 20, 2001, one week after Maxwell was appointed, CIT alleges that it wrote to Maxwell to make arrangements for the return of its property. If CIT did not get satisfaction within a few weeks after that, why did it not seek court intervention? This was a very active case when it arrived on this court's doorstep and the court has provided a weekly hearing for it for the last six and a half years. It is odd that CIT waited until May 2007, as the case is winding down,to come forward to stake a claim. It never even sought payment on its administrative claim.[3] The letter was written by CIT's counsel five years and ten months prior to the filing of this adversary proceeding.

---

[3]See Collier on Bankruptcy, §503.03[2] (15th ed. Rev.)(bankruptcy court has discretion to determine when administrative claim will be paid).

CIT failed to bring its causes of action in a timely manner. Therefore, the complaint will be dismissed in its entirety.

## Conclusion

For the foregoing reasons, Maxwell's motion will be granted.

Date: November 15, 2007

ENTERED:

_____
John D. Schwartz
United States Bankruptcy Judge